UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LUDEMA CRUZ DORWARD,

                    Plaintiff,

vs.                                Case No.  2:10-cv-669-FtM-29DNF

MACY'S  INC.,  doing  business  as
Macy's Florida Stores, LLC,

                    Defendant.
_____


## OPINION AND ORDER

This matter comes before the Court on defendant's Motion to Compel Arbitration and Stay Case (Doc. #14) and Memorandum in Support (Doc. #16), filed on December 22, 2010.  Plaintiff filed a Response (Doc. #23) and a Memorandum in Support (Doc. #24) on January 11, 2011.  On February 18, 2011, defendant filed a Reply. (Doc. #33.)  Plaintiff filed a Sur-Reply on March 1, 2011.  (Doc. #34.)  Because plaintiff is pro se, her pleadings are construed liberally.  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).  For the reasons set forth below, the proceedings shall be stayed and arbitration compelled.

I.

Plaintiff alleges the following facts in the Complaint (Doc. #1): Plaintiff is a former employee of Macy's, Inc. Florida Stores, LLC (Macy's) and a Filipino citizen who is a permanent resident of the United States.  (Id., pp. 2-3.)  Plaintiff asserts that defendant provided her with unequal unemployment opportunities by,

inter alia, denying her internet access, manuals for administrative computer programs, and training which were necessary for her job, and which were afforded to her co-worker of the same position. (Id., pp. 4-7.)  Plaintiff further asserts that defendant defamed, intimidated, and threatened her, wrongfully suspended her from employment, and deprived her of income and other employment-related benefits.  (Id., pp. 7-9.)  Plaintiff claims that defendant's actions constitute a violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 2000(e) et seq. (id., p. 1) in that defendant has unlawfully discriminated against plaintiff on the basis of national origin and race (id., pp. 8-9).  Plaintiff seeks declaratory and injunctive relief, and compensatory damages. (Id., pp. 9, 11.)

## II.

Defendant seeks to compel arbitration and stay these proceedings based upon plaintiff's arbitration agreement with defendant.  Defendant hired plaintiff as an employee on February 6, 2007.  (Doc. #1, p. 3; Doc. #14, p. 1.)  At that time, defendant utilized the Solutions InSTORE Program, a four-step dispute resolution process to resolve workplace disputes.  (Doc. #14, pp. 1-2.)  Step One is called "Open Door," where an employee attempts to resolve his or her dispute informally by discussing it with a supervisor or another member of the local management team.  (Doc. #14-1, pp. 8, 21.)  If the employee's problem is not resolved in

-2-

Step One, he or she may proceed to Step Two of the process. In Step Two, the employee files a written request for review with the Office of Senior Human Resources Management within thirty days of the Open Door decision. (Id., pp. 9, 21.) The complaint is referred to an appropriate Human Resources executive who was not involved in Step One. (Id.) The Human Resources executive completes an investigation and issues a written decision. (Id., p. 21.)

If the employee is not satisfied with the result of Step 2, he or she may proceed to Step Three, provided that the employee's claim could otherwise be considered by a court of law. (Id., pp. 10-11, 22.) In Step Three, the employee contacts the Office of Solutions InSTORE to file a written Request for Reconsideration. The employee may have his or her request reviewed either by a Peer Panel or by an employee relations professional at the Office of Solutions InSTORE. (Id.) If the employee is not satisfied with the decision of the Peer Panel or employee relations professional, he or she may proceed to Step 4: Arbitration. (Id., p. 12.)

Employees are automatically covered by all four steps of the program by taking or continuing a job with the Company. (Id., pp. 13, 23, 38.) However, agreeing to Step 4 is voluntary, and employees are given the opportunity to decline to be covered by Step 4. (Id.) To decline the Step 4 arbitration agreement, an employee must opt out by mailing an election form to the Office of

-3-

Solutions InSTORE within thirty days from his or her date of hire. (Id., pp. 13, 38.)

Defendant provides new employees with a Solutions InSTORE brochure and Plan Document. (Doc. #15-1, pp. 6-7.) The brochure provides a detailed description of all four steps of the program, and instructions on how to exclude oneself from Step 4 arbitration, (Doc. #14-1, p. 13). An election form is also enclosed within the brochure. (Doc. #15-1, p. 6.) Defendant further requires new employees to sign a Solutions InSTORE New Hire Acknowledgment. (Id., p. 7.) By signing this form, the employee acknowledges that he or she has received the brochure, understands that he or she has 30 days from the date of hire to opt out of Step 4 arbitration, and may obtain further information about the program from several sources, including a Solutions InSTORE website. (Doc. #14-1, p. 40.)

The arbitration agreement contains the following relevant provisions:

> **Step 4 - Arbitration Rules and Procedures**
> **Article 1 - Individuals Covered**
>
> All Associates are automatically covered by all 4 steps of the program by taking or continuing a job with the Company. That means that all Associates agree, as a condition of employment, to arbitrate any and all disputes, including statutory and other claims, not resolved at Step 3. However, Arbitration is a voluntary condition of employment. Associates are given the option of excluding themselves from Step 4 arbitration within a prescribed time frame. Issues at Step 4 are decided by a professional from the American Arbitration Association in an arbitration process, rather than in a court

-4-

process.  Arbitration thus replaces any right you might have to go to court and try your claims before a jury. You are covered by Step 4 unless and until you exercise the option to exclude yourself from arbitration.  Whether you choose to remain covered by arbitration or to exclude yourself has no negative effect on your employment.

(Id., p. 23.)

**Article 2 - Claims Subject to or Excluded from Arbitration**

Except as otherwise limited, all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state, or local decisional or statutory law ("Employment-Related Claims"), shall be settled exclusively by final and binding arbitration. Arbitration is administered by the American Arbitration Association ("AAA") under these Solutions InSTORE Early Dispute Resolution Rules and Procedures and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation Procedures.  Arbitration is held before a neutral, third-party Arbitrator.  The Arbitrator is selected in accordance with these Solutions InSTORE Early Dispute Resolution Rules and Procedures. . . .

Arbitration shall apply to any and all such disputes, controversies or claims whether asserted by the Associate against the Company and/or against any employee, officer, director or alleged agent of the Company.  Arbitration shall also apply to any and all such civil disputes, controversies or claims asserted by the Company against the Associate.

All unasserted employment-related claims as of January 1, 2007 arising under federal, state, or local statutory or common law, shall be subject to arbitration.  Merely by way of example, Employment-Related Claims include, but are not limited to, claims arising under . . . Title VII of the Civil Rights Act of 1964 . . . breach of the duty of loyalty, the law of contract or the law of tort; including, but not limited to, claims for malicious prosecution, wrongful discharge . . . intentional/ negligent infliction of emotional distress or defamation.

(Id., pp. 24-25.)

**Article 3 - Dismissal/Stay of Court Proceeding**
By agreeing to arbitration, the Associate and the Company
agree to resolve through arbitration all claims described
in or contemplated by Article 2 above.  This means that
neither the Associate nor the Company can file a civil
lawsuit in court against the other party relating to such
claims.  If a party files a lawsuit in court to resolve
claims subject to arbitration, both agree that the court
shall dismiss the lawsuit and require the claim to be
resolved through the Solutions InSTORE program.

(Id., p. 25.)

The election form reads in relevant part as follows:

During the 30 days following your hire date, you have the
option to exclude yourself from being covered by Step 4 -
Arbitration and its benefits.  The choice you make will
stay in effect for the entire duration of your employment
and afterwards.  This form serves as an election form if
you choose not to be covered by Arbitration.  Whether to
stay covered by or exclude yourself from Step 4 is your
own decision. You should read all information, including
the program brochure, the Plan document, and this form,
carefully.

(Id., p. 38.)

The Solutions InSTORE New Hire Acknowledgment form reads as

follows:

I have received a copy of the Federated Department
Stores'[1] Solutions InSTORE brochure and understand that
I have 30 days from my date of hire to review the
information and postmark my form to the Office of
Solutions InSTORE if I elect to decline the benefits of
Step 4 of the program, Arbitration.  If more detailed
plan information is desired, I know I can obtain a copy
of the Plan Document by logging onto
www.employeeconnection.net, by requesting it through my
Human Resources Representative or the Office at Solutions
InSTORE as indicated on the election form.  Questions
regarding the program can be directed to my manager or

---

[1]In June 2007, Federated Department Stores, Inc. changed its
name to Macy's, Inc. (Doc. #15-1, p. 1.)

-6-

Human Resources Representative.

(Id., p. 40.)

On February 6, 2007, the date of plaintiff's hire, plaintiff signed the Solutions InSTORE New Hire Acknowledgment form. (See id.) Plaintiff did not opt out of Step 4, mandatory arbitration, within thirty days after her hire. (Doc. #15-1, p. 9.)

Defendant contends that plaintiff agreed to arbitrate all disputes arising out her employment with defendant, and that plaintiff's claims must be arbitrated. Plaintiff raises six arguments in response: (1) the arbitration agreement is unconscionable; (2) the arbitration agreement violates public policy; (3) plaintiff was not a party to the arbitration agreement; (4) defendant waived the arbitration agreement; (5) plaintiff never assented to the arbitration agreement; and (6) defendant's breach of the arbitration agreement relieves plaintiff of the obligation to arbitrate. The Court will address each of plaintiff's arguments in turn.

### III.

Under the Federal Arbitration Act (FAA), arbitration agreements are "'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the [sic] contract.'" Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005)(quoting 9 U.S.C. § 2). As a consequence, the FAA "requires courts to enforce privately

-7-

negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 478 (1989). "[C]ompulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes." Caley, 428 F.3d at 1367 (citation omitted). Indeed, there is a "strong federal preference for arbitration of disputes," which should be enforced where possible. Musnick v. King Motor Co., 325 F.3d 1255, 1258 (11th Cir. 2003).

Despite the "liberal federal policy favoring arbitration agreements," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), the FAA does not authorize a court to compel arbitration if there is no agreement to arbitrate. EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002); AT&T Techs. v Commc'ns Workers of Am., 475 U.S. 643, 648 (1986). Accordingly, "the first task of a court asked to compel arbitration is to determine whether the parties agreed to arbitrate that dispute. . . . Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

-8-

**A.   The Arbitration Agreement is Not Unconscionable.**

To determine whether a contract is unconscionable under Florida law, a court must examine the contract itself and the facts surrounding its making for both procedural and substantive unconscionability. Murphy v. Courtesy Ford, L.L.C., 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006); Woebse v. Health Care & Ret. Corp. of Am., 977 So. 2d 630 (Fla. 2d DCA 2008).[2] Further, "[t]he party seeking to avoid the arbitration provision has the burden to establish unconscionability." Murphy, 944 So. 2d at 1134 (citation omitted).

*1.   The Arbitration Agreement Is Not Procedurally Unconscionable.*

"The procedural component of unconscionability concerns the manner in which the contract was entered.   It involves consideration of . . . the relative bargaining power of the parties and their ability to understand the contract terms." Orkin Exterminating Co. v. Petsch, 872 So. 2d 259, 265 (Fla. 2d DCA 2004).   Courts must consider the following four factors to determine whether a contract is procedurally unconscionable under

_____

[2]The Court is aware of the conflict among Florida state courts regarding the analytical approach to unconscionability, which was certified to the Florida Supreme Court by the Eleventh Circuit in Pendergast v. Sprint Nextel Corp., 592 F.3d 1119 (11th Cir. 2010). However, the conflict recognized by the Pendergast court has no bearing on the ultimate resolution of defendant's Motion because the Court concludes that the arbitration provision in question is not unconscionable regardless of whether the Court applies a "balancing," "sliding scale," or "independent analysis" approach.

Florida law:

> (1) the manner in which the contract was entered into;
> (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

Pendergast, 592 F.3d 1119, 1135 (11th Cir. 2010)(citations omitted).   Additionally, while unequal bargaining power between employers and employees may be common, "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991).

The Court finds some evidence of procedural unconscionability, as Macy's is a "large corporation with greatly superior bargaining power."     Henry v. Pizza Hut of Am., Inc., No. 6:07-cv-01128-Orl-DAB, 2007 U.S. Dist. LEXIS 72193, at *19 (M.D. Fla. Sept. 27, 2007). As a result of this "disparity in bargaining power," Bhim v. Rent-A-Center, Inc., 655 F. Supp. 2d 1307, 1315 (S.D. Fla. 2009), the second factor in the Court's procedural unconscionability analysis "militates toward unconscionability," id. However, plaintiff has failed to establish that any of the other factors are indicative of unconscionability.

First, the manner in which the arbitration agreement was entered into does not support a finding of procedural

unconscionability.   The record shows that Macy's utilized an extensive information campaign to ensure that new employees were educated regarding the Solutions InSTORE Program and the arbitration agreement.  (Doc. #15-1, pp. 6-8.)  In addition to requiring its employees to sign the New Hire Acknowledgment form, Macy's provides new employees with a Solutions InSTORE brochure, Plan Document, and election form.  (Id.)  These materials refer to a variety of additional resources where employees can obtain more detailed information about the arbitration agreement.   The resources include a toll-free telephone number and an e-mail address for the Office of Solutions InSTORE, as well as a website where employees can access the Plan Document, and the website of the American Arbitration Association.  (Doc. #14-1, pp. 13, 38, 40.)

Plaintiff asserts that she is an "ordinary and . . . average employee, an Asian who is unsophisticated in legal matters," (Doc. #23, p. 2), and that she never received the program brochure, the election form, or the Plan Document, (id., pp. 3, 4; Doc. #34, pp. 1, 3).   At the same time, plaintiff states that she later "discovered accidentally" (Doc. #23, p. 4) the election form, which was "hidden" within the brochure, (id., pp. 2, 7; Doc. #34, p. 2; Doc. #24, p. 3).[3]  The record establishes, however, that plaintiff

_____

[3]While plaintiff's allegations appear incongruous, whether plaintiff actually received the documents is, in any event, not dispositive.  See Sanders v. Comcast Cable Holdings, LLC, No. 3:07-

signed the New Hire Acknowledgment form, in which she indicated that she received the Solutions InSTORE brochure, and that she understood that she had thirty days to opt-out of mandatory arbitration. (Doc. #14-1, p. 40.)  Additionally, plaintiff admits that she was aware of the Solutions InSTORE website and toll-free telephone number while she engaged in the dispute resolution process, and that she did not utilize either of these avenues to obtain more detailed information about the arbitration agreement. (Doc. #34, p. 2.)

Second, the arbitration agreement was not offered on a "take-it-or-leave-it" basis.  Plaintiff contends that the arbitration agreement was an adhesion contract.  However, the contract clearly indicates that the employee's decision to enter into the arbitration agreement is a voluntary condition of employment, and that the employee may elect to decline the agreement with no negative effect on his or her employment.  (Doc. #14-1, p. 23; see also id., pp. 13, 20, 38, 40.)  Plaintiff was free to take or to leave the arbitration agreement, and she chose to take it.

Finally, under Florida law, a party to a contract has the "duty to learn and know the contents of a proposed contract before

---

cv-918-J-33HTS, 2008 U.S. Dist. LEXIS 2632 (M.D. Fla. Jan. 14, 2008)(binding arbitration agreement found where defendant's practice was to mail to each customer a notice of arbitration with instructions that customer may opt-out within 30 days, notwithstanding plaintiffs' claim that they never received the notice of arbitration).

he signs and delivers it [as he] is presumed to know and understand its contents, terms, and conditions." Sabin v. Lowe's of Fla., Inc., 404 So. 2d 772, 773 (Fla. 5th DCA 1981)(citation omitted). Plaintiff acknowledges that the wording of the arbitration agreement was in "plain English" (Doc. #23, p. 3), and that "limitation of English skills" forms no part of her argument, (Doc. #34, p. 3). The terms of the arbitration agreement in this case are clear and unambiguous, and so the Court must enforce the agreement according to its terms. Bryant v. Food Mach. & Chem. Corp. Niagara Chem. Div., 130 So. 2d 132, 134 (Fla. 3d DCA 1961)(citations omitted). Thus, the Court finds that the agreement is not procedurally unconscionable.

   *2.   The Arbitration Agreement is Not Substantively Unconscionable.*

   Substantive unconscionability "focuses on the agreement itself" and whether the terms of the agreement are "unreasonable and unfair." Powertel, Inc. v. Bexley, 743 So. 2d 570, 574 (Fla. 1st DCA 1999)(quoting Kohl v. Bay Colony Club Condo., Inc., 398 So. 2d 865, 868 (Fla. 4th DCA 1981)). An agreement is substantively unconscionable if the terms are "so outrageously unfair as to shock the judicial conscience." Bland ex. rel. Coker v. Health Care and Ret. Corp. of Am., 927 So. 2d 252, 256 (Fla. 2d DCA 2006)(internal quotations and citation omitted)). To determine substantive unconscionability, courts further consider "whether the disputed

-13-

terms limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes." EEOC v. Taco Bell of Am., Inc., No. 8:06-cv-1792-T-30MAP, 2007 U.S. Dist. LEXIS 18292, at *4 (M.D. Fla. Mar. 15, 2007)(citing Palm Beach Motor Cars Ltd., Inc. v. Jeffries, 885 So. 2d 990, 992 (Fla. 4th DCA 2004)).

While plaintiff asserts broadly that the arbitration agreement in this case is substantively unconscionable, plaintiff points to no particular terms of the agreement that would support such a finding.  Plaintiff argues that she surrendered her legal rights by agreeing to arbitrate any claims she might have against defendant. (Doc. #23, p. 2.)  However, it is well-settled that, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi Motors Corp., 473 U.S. at 628.

Further, the arbitration agreement in this case affords the parties the right to "any relief . . . that a court could grant." (Doc. #14-1, p. 33.)  Accordingly, the agreement does not limit available remedies, exclude punitive damages, or prevent equitable relief.  Further, the agreement does not impose any substantial costs on the plaintiff, as it requires her to pay a maximum filing fee of $125.00 to begin the arbitration process.  (Id., p. 32.)

-14-

This filing fee would be refunded if the employee should prevail at arbitration.  (Id., p. 33.)   Beyond this, defendant pays the remainder of the costs of arbitration.  (Id., p. 32.)  Lastly, the arbitration agreement does not lack mutuality of obligation, as it requires both parties to resolve their disputes through arbitration.  (Id., p. 24.)  Plaintiff has not carried her burden of establishing that the arbitration agreement is so outrageously unfair as to shock the judicial conscience. Accordingly, the Court finds that the agreement is not substantively unconscionable.

**B.   The Arbitration Agreement Does Not Violate Public Policy.**

Plaintiff asserts that mandatory arbitration in this case would "impede or eliminate . . . Plaintiff's constitutional rights and violate[] public policy . . . ."  (Doc. #23, p. 13.)  Plaintiff opines that her civil rights claims "should be resolved in the court in full view of the public."  (Id.)  The role of this Court, however, is to "apply the law," Reedman v. Comm'r, Ga. Dep't of Corr., 2011 U.S. App. LEXIS 7631, at *6 (11th Cir. Apr. 13, 2011), and the law requires "courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms," Volt Info. Scis., 489 U.S. at 478.

Having made the bargain to arbitrate, plaintiff "should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp., 473 U.S. at 628.   The Supreme

-15-

Court has held that employees may waive judicial remedies for civil rights claims of employment discrimination, and may subject those claims to mandatory arbitration by contract. <u>Gilmer</u>, 500 U.S. at 26. Additionally, the amended Title VII favors arbitration: "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1081 (codified as amended at 42 U.S.C. § 1981a).

Similarly, plaintiff's argument that "civil rights are not waivable" (Doc. #23, p. 16) misses the mark, as plaintiff did not waive her statutory rights, but merely substituted the forum of their resolution. <u>See</u> <u>Mitsubishi Motors Corp.</u>, 473 U.S. at 628.

Therefore, the Court concludes that the arbitration agreement does not violate public policy.

## C. **Plaintiff Was a Party to the Arbitration Agreement.**

Plaintiff asserts that an arbitration agreement must be signed to be "binding and enforceable." (Doc. #24, p. 2.) Consequently, plaintiff argues that she was not a party to the arbitration agreement (<u>id.</u>, p. 1; Doc. #23, p. 1) because she did not sign it.

Plaintiff's argument requires no extended discussion. Under both the Federal Arbitration Act, <u>Santos v. Gen. Dynamics Aviation Servs. Corp.</u>, 984 So. 2d 658, 660 (Fla. 4th DCA 2008), and the

Florida Arbitration Code, <u>H.W. Gay Enters. v. John Hall Elec. Contracting, Inc.</u>, 792 So. 2d 580, 581 (Fla. 4th DCA 2001), an arbitration agreement need not be signed to be enforceable.

Accordingly, the Court finds that plaintiff was a party to the arbitration agreement.

**D.  Defendant Did Not Waive the Arbitration Agreement.**

The determination of whether Macy's waived its right to arbitration, as opposed to whether the contract is void or unenforceable under Florida law, is controlled solely by federal law.  <u>See</u> <u>S & H Contractors, Inc. v. A.J. Taft Coal Co.</u>, 906 F.2d 1507, 1514 (11th Cir. 1990).  To determine whether a party has waived its right to arbitrate, this Court applies a two-part test: "First, we decide if, 'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right,' and, second, we look to see whether, by doing so, that party 'has in some way prejudiced the other party.'"  <u>Ivax Corp. v. B. Braun of Am.</u>, 286 F.3d 1309, 1315-16 (11th Cir. 2002)(quoting <u>S & H Contractors, Inc.</u>, 906 F.2d at 1514).

With regard to the first part of the waiver test, a party acts "inconsistently with its right to arbitrate where its conduct-including participation in litigation-manifests an intent to avoid or to waive arbitration."  <u>Citibank, N.A. v. Stok & Assocs., P.A.</u>, 387 F. App'x 921, 924 (11th Cir. 2010)(citation omitted).  "Waiver of arbitration is not to be lightly inferred."  <u>Wilson v. Par</u>

Builders II, 879 F. Supp. 1187, 1189 (M.D. Fla. 1995)(citation omitted).   Therefore, participation in litigation must be substantial in order for it to constitute a waiver of the right to arbitrate. Citibank, N.A., 387 F. App'x at 924; see also Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir. 1995)(holding that defendant insurance company waived its right to arbitrate when it proceeded to litigation, and did not seek to compel arbitration until after a verdict was entered against it); E. C. Ernst, Inc. v. Manhattan Constr. Co., 551 F.2d 1026, 1040-41 (5th Cir. 1977)(finding waiver where the parties to the arbitration agreement had litigated their dispute for two and a half years before one party requested arbitration); Burton-Dixie Corp. v. Timothy McCarthy Constr. Co., 436 F.2d 405, 408-409 (5th Cir. 1971)(finding waiver and noting that the party seeking arbitration responded to Complaint by asserting affirmative defense, impleading several third-party defendants, and proceeding to litigation).

    With regard to the second part of the waiver test, the Court determines prejudice by considering "the length of delay in demanding arbitration and the expense incurred by [the opposing] party from participating in the litigation process." S & H Contractors, 906 F.2d at 1514 (citation omitted).

    Finally, "[t]he burden of proving waiver rests with the party seeking to prove waiver." Info. & Display Sys., L.L.C. v.

Auto-Ref, Inc., No. 3:05-cv-1135-J-33TEM, 2006 U.S. Dist. LEXIS 71961, at *11 (M.D. Fla. Oct. 3, 2006)(citation omitted). Because federal law favors arbitration, this burden is a heavy one. Citibank, N.A., 387 F. App'x at 923.

Plaintiff asserts that defendant's initial filing of its Motion for Extension of Time to Reply, and consequent delay in filing its Motion to Compel Arbitration, constituted a waiver of the right to arbitrate. (Doc. #23, pp. 11-12.) The Court disagrees. Macy's requested only thirty additional days to respond to plaintiff's complaint (Doc. #5), and its first substantive pleading was the Motion to Compel Arbitration and Stay Case, (Doc. #14). In no way did Macy's "substantially invoke[] the litigation machinery prior to demanding arbitration." S & H Contractors, 906 F.2d at 1514 (quotations and citation omitted).

Having found that, as a matter of law, defendant did not act inconsistently with its arbitration right merely by requesting an extension of time to reply, the Court need not address the issue of prejudice. Accordingly, and because questions of "waiver, delay, or a like defense to arbitrability" should be resolved in favor of arbitration, Moses H. Cone Mem'l Hosp., 460 U.S. at 25, the Court finds that defendant has not waived the arbitration agreement.

**E.  Plaintiff Assented to the Arbitration Agreement.**

Next, plaintiff contends that the she never assented to the arbitration agreement, and provides the following reasons,

-19-

construed liberally, in support of her argument: (1) she did not provide an affirmative response to defendant's offer to arbitrate (Doc. #23, pp. 2, 7); (2) she did not fully understand the terms of the agreement (id., pp. 2, 3); (3) she did not intend to enter the arbitration agreement (id., p. 3); and (4) she was unaware that the New Hire Acknowledgment form referred to the arbitration agreement, (id.).

To determine whether an enforceable agreement to arbitrate exists, the Court looks to Florida law. See Caley, 428 F.3d at 1368 (citation omitted)("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists.").  Under Florida law, mutual assent is an "absolute condition precedent to the formation of the contract," Gibson v. Courtois, 539 So. 2d 459, 460 (Fla. 1989), and "[w]ithout a meeting of the minds, there can be no contract of any kind."  David v. Richman, 528 So. 2d 25, 27 (Fla. 3d DCA 1988)(citation omitted).

Plaintiff's first argument is that she did not assent to the arbitration agreement because she did not provide an "affirmative response."  (Doc. #23, p. 7.)  In Florida, it is well-settled that the offeror may specify the terms and manner of acceptance.  See Kendel v. Pontious, 261 So. 2d 167, 170 (Fla. 1972); Holloway v. Gutman, 707 So. 2d 356, 357 (Fla. 5th DCA 1998)("The acceptance of an offer, to result in a contract, must be . . . in the mode, at the place, and within the time expressly or impliedly required by

-20-

the offer.").

Nothing requires the offeror to limit the manner of acceptance to an affirmative response.  Accordingly, a party may manifest assent to an agreement to arbitrate by failing to opt out of the agreement within a specified time.  See, e.g., Day v. Persels & Assocs., LLC, No. 8:10-CV-2463-T-33TGW, 2011 U.S. Dist. LEXIS 49231, at *11-12 (M.D. Fla. May 9, 2011)(plaintiff assented to arbitration agreement when she failed to return an opt-out rejection notice within the prescribed time); Delano v. MasTec, Inc., No. 8:10-CV-320-T-27MAP, 2010 U.S. Dist. LEXIS 126793 (M.D. Fla. Nov. 15, 2010)(binding arbitration agreement found where employees signed an acknowledgment form stating that they understood that they would be bound by the agreement unless they returned an opt-out form within thirty days).

In this case, defendant, as offeror, notified plaintiff that she had thirty days in which to opt out of the arbitration agreement.  Plaintiff did not mail in the election form within the allotted thirty days.  By declining to opt out in accordance with the terms of the offer, plaintiff accepted defendant's offer to resolve any disputes through arbitration.  Accordingly, there is "sufficient proof that the parties actually agreed to arbitrate." BDO Seidman, LLP v. Bee, 970 So. 2d 869, 874 (Fla. 4th DCA 2007)(citation omitted).

Second, plaintiff argues that there was no mutual assent, or

meeting of the minds, because she did not have the "same full understanding [as defendant] of what [was] stated in the contract." (Doc. #23, p. 2.)  Similarly, plaintiff asserts that she did not understand the legal ramifications of signing the New Hire Acknowledgment form.  (See id.)

Under Florida law, "a party to a contract is 'conclusively presumed to know and understand the contents, terms, and conditions of the contract.'"  Rocky Creek Ret. Props. v. Estate of Fox, 19 So. 3d 1105, 1109 (Fla. 2d DCA 2009)(quoting Stonebraker v. Reliance Life Ins. Co. of Pittsburgh, 166 So. 583, 584 (Fla. 1936)).  Further, "[a] party has a duty to learn and know the contents of an agreement before signing it, and [a]ny inquiries . . . concerning the ramifications of [the contract] should have been made before signing."  Id. (internal quotations and citation omitted).

In this case, plaintiff entered into an arbitration agreement with defendant, and so plaintiff is conclusively presumed to have understood the contents, terms, and conditions of that agreement. Additionally, plaintiff concedes that the arbitration agreement was written in "plain English" (Doc. #23, p. 3), and has pointed to no particular provision of the agreement that was difficult for her to understand.  Still, if plaintiff did not understand the arbitration agreement, it was incumbent upon her to learn the contents of that agreement before signing the Acknowledgment form and subsequently

manifesting her assent.

Therefore, the Court concludes that plaintiff's alleged lack of understanding has no bearing on her legally binding assent to the arbitration agreement.

Third, plaintiff asserts that she did not intend to enter into the arbitration agreement.  (Doc. #23, pp. 2-3.)  Plaintiff argues that the New Hire Acknowledgment form "was just one of the numerous documents Plaintiff was required to sign" (id., p. 3), and that her intention in signing these documents was "to be done and get it over with in order to move forward with the next step of the hiring process," (id.).  Plaintiff further asserts that she signed the Acknowledgment form "by mistake."  (Id.)

As a preliminary matter, plaintiff's private intentions in entering into the arbitration agreement have no bearing on the Court's analysis.  Where, as here, the "contract is unambiguous, the instrument alone is taken to express the intent of the parties."  Gasca v. Empresa de Transporte Aero Del Peru, 992 F. Supp. 1377, 1381 (S.D. Fla. 1998)(quotations and citation omitted); see also Medanic v. Citicorp Inv. Servs., 954 So. 2d 1210, 1212 (Fla. 3d DCA 2007)(internal quotations and citation omitted)("The [unambiguous] terms of the contract . . . are conclusive . . . the question being, not what intention existed in the minds of the parties, but what intention is expressed by the language used.").

The Court thus looks to the language of the written

arbitration agreement to determine plaintiff's intent.  The writing in this case unequivocally indicates that plaintiff agreed to resolve through arbitration all claims described in the contract, including claims of employment discrimination, and that plaintiff could not file a civil lawsuit against Macy's relating to such claims.  (Doc. #14-1, pp. 24-25.)  Likewise, the New Hire Acknowledgment form clearly indicates that plaintiff was aware of the arbitration agreement, as well as the means of declining the agreement if she so desired.  (Id., p. 40.)  The written agreement thus conclusively establishes that plaintiff intended to resolve her claims through arbitration.  Accordingly, the Court finds that plaintiff intended to enter into the arbitration agreement.

Finally, plaintiff argues that she did not assent to the arbitration agreement because she was unaware that the New Hire Acknowledgment form referred to the arbitration agreement. Specifically, plaintiff asserts that when she signed the Acknowledgment form, she "had no idea . . . that there was a contract attached to it."  (Doc. #23, p. 3.)

In Florida, "where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing."  Gustavsson v. Wash. Mut. Bank, F.A., 850 So. 2d 570, 573 (Fla. 4th DCA 2003)(internal quotations and citation omitted).  The New Hire Acknowledgment form expressly refers to the Solutions

-24-

InSTORE brochure, and to Step 4 of the Solutions InSTORE program, Arbitration.  The form further describes the Plan Document, which contains the written arbitration agreement.  Consequently, the Court interprets the written arbitration agreement as part of the New Hire Acknowledgment form.  Plaintiff's alleged ignorance of the contents of that writing has no bearing on her duty to arbitrate according to its terms.  Therefore, the Court finds that plaintiff assented to the arbitration agreement.

**F.   Defendant's Alleged Breach of the Arbitration Agreement Does Not Relieve Plaintiff of Her Obligation to Arbitrate.**

Plaintiff asserts that she is relieved of her obligation to arbitrate because Macy's breached the arbitration agreement in a variety of ways.  Specifically, plaintiff contends that defendant breached the agreement by conducting an improper investigation, failing to adhere to confidentiality, and retaliating against plaintiff with acts of intimidation, coercion, and harassment. (Doc. #23, pp. 7, 8, 14; Doc. #34, p. 4.)  In sum, plaintiff argues that the arbitration agreement is void and unenforceable as a result of defendant's "non deliverance of the obligations set forth in the contract."  (Doc. #23, p. 10.)

The Supreme Court has held that, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006)).  Thus, "[a] challenge to the

validity or enforceability of a contract generally, as distinguished from a challenge to the validity of the arbitration clause specifically, is subject to arbitration under both the Florida Arbitration Code and the FAA." John B. Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094, 1098 (11th Cir. 2003). Consequently, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2778 (2010).[4]

Plaintiff challenges the validity of "the contract in its entirety" (Doc. #23, p. 1) based on defendant's alleged breach of certain contractual provisions found in Steps 1-3 of the Solutions InSTORE program.  The arbitration agreement forms Step 4 of the same program, and so is part of the same general contract. However, while defendant's performance in accordance with these provisions may affect the enforceability of the contract generally, it has no bearing on the arbitration agreement specifically.  The agreement between plaintiff and defendant to resolve disputes through arbitration is severable from any breach of the contractual provisions referenced by plaintiff in support of

---

[4]The Court is mindful that "[i]n some cases the claimed basis of invalidity for the contract as a whole will be much easier to establish than the same basis as applied only to the severable agreement to arbitrate." Rent-A-Center, W., Inc., 130 S. Ct. at 2778. Nevertheless, we "require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." Id.

her argument.  The arbitration agreement is enforceable apart from the remainder of the contract, and plaintiff's challenge "should therefore be considered by an arbitrator, not a court."  Buckeye Check Cashing, Inc., 546 U.S. at 446.

For the foregoing reasons, the Court concludes that plaintiff is not relieved of her obligation to arbitrate because of defendant's alleged breach of the arbitration agreement.

Accordingly, it is now

**ORDERED**:

1.  Defendant's Motion to Compel Arbitration and Stay Case (Doc. #14) is **GRANTED**.

2.  The case is hereby **stayed** pending notification by the parties that plaintiff has exhausted arbitration and the stay is due to be lifted or the case is due to be dismissed.

3.  The Clerk shall terminate all deadlines and motions, and administratively close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___20th___ day of July, 2011.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record

-27-